UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KASEY S. BUECHEL,

    Plaintiff,

  v.                                   Case No. 22-CV-589

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

    Kasey S. Buechel seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her Title II application for a period of disability and disability insurance benefits and Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

    On May 12, 2020, Buechel filed applications for Title II and Title XVI disability benefits, alleging disability beginning on March 24, 2019 due to osteoporosis, narrowing of discs in back, bone spurs on spine, and restless leg syndrome. (Tr. 280.) Buechel's applications were denied initially and upon reconsideration. (Tr. 29.) Buechel filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on August 24, 2021. (Tr. 49–81.) Buechel, who was represented by counsel, testified, as did Pamela J. Nelligan, a vocational expert ("VE"). (*Id.*)

In a written decision issued August 31, 2021, the ALJ found that Buechel had the severe impairments of osteoarthritis of the bilateral knees, status post-bilateral total knee arthroplasty surgeries, degenerative disc disease, obesity, depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"). (Tr. 32.) The ALJ found that Buechel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 33–34.) The ALJ further found that Buechel had the residual functional capacity ("RFC") to perform light work, with the following limitations: she can occasionally climb ladders, ropes, scaffolds, ramps and stairs, stoop, crouch, kneel, and crawl; must avoid concentrated exposure to excessive vibration; must avoid all use of dangerous moving machinery and all exposure to unprotected heights; is limited to understanding, remembering, and carrying out no more than simple instructions, and to jobs requiring a reasoning level of no more than two per the Dictionary of Occupational Titles; can perform simple, routine tasks; is limited to employment in a low stress job, defined as having only occasional decision-making required and only occasional changes in the work setting; is limited to work where there is no production rate or pace work such as an assembly line with no hourly production quotas but end of the day production quotas are permissible; and can have occasional, brief, and superficial contact with the public, co-workers, and supervisors. (Tr. 35–40.)

The ALJ found that while Buechel was unable to perform her past relevant work as a resident care aide, considering Buechel's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 40–42.) As such, the ALJ found that Buechel was not disabled from her alleged onset date of March 24, 2019, through the date of the decision, August 31, 2021. (Tr. 42.) The ALJ's

decision became the Commissioner's final decision when the Appeals Council denied Buechel's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## 2. Application to This Case

Although the ALJ found both physical and mental severe impairments, Buechel states that her appeal is primarily concentrated on her mental health impairments. (Pl.'s Br. at 4 n.1, Docket # 16.) Buechel argues that the ALJ erred in three ways. First, she argues that the ALJ failed to state any logical bridge between Buechel's medical records, limitations, and RFC. (*Id.* at 12–17.) Second, Buechel argues that the ALJ's decision is not supported by substantial evidence and fails to properly apply the regulatory factors for medical opinions and evidence. (*Id.* at 18–24.) And third, she argues that the ALJ failed to provide complete hypotheticals to the VE and failed to fully apply the VE's testimony. (*Id.* at 24–27.) I will address each argument in turn.

### 2.1 Evaluation of RFC Assessment for Mental Impairments

Buechel argues that the ALJ erred by failing to properly provide a narrative discussion describing how the evidence supports each conclusion in her RFC assessment of her mental impairments, in contravention of Social Security Ruling 96-8p. (Pl.'s Br. at 12–17.) Interestingly, while Buechel faults the ALJ for failing to "show his work" in explaining how he arrived at her RFC (*id.* at 17), she does not seem to argue that she is more restricted than the assessed RFC. In other words, Buechel argues that the ALJ simply failed to properly explain how he reached the conclusion that he did, not that the conclusion was wrong. Thus, even assuming, *arguendo*, that the ALJ did not properly "show his work" in explaining Buechel's RFC, the error is likely harmless if Buechel does not contend that she is more restricted than what the ALJ assessed. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless. It is unclear what

4

kinds of work restrictions might address [plaintiff's] limitations in concentration, persistence, or pace because he hypothesizes none.").

Furthermore, the ALJ did "show his work" in reaching the RFC conclusion in this case. Buechel argues that "there is no explanation" in the ALJ's decision regarding "how Plaintiff's limitations in each of the major areas of mental functioning are accounted for in the RFC." (Pl.'s Br. at 14.) This is inaccurate. The ALJ's reasoning as to how he accounted for Buechel's degree of functional limitation in each of the four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself, 20 C.F.R. § 404.1520a, is clear.

Section 404.1520a addresses how the SSA evaluates mental impairments. At step two of the five step sequential analysis for determining disability, the ALJ asks whether the claimant has a medically determinable impairment that is "severe." During the administrative process, a State agency psychological consultant completes a form called the Psychiatric Review Technique ("PRT") (although these days the form is completed electronically), in which he or she assesses whether the claimant has a medically determinable impairment that is severe, and then rates the claimant's abilities in four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a. The degree of limitation is rated on a five-point scale: none, mild, moderate, marked, or extreme. *Id.* If the State Agency consultant concludes that the claimant's mental impairment is severe but does not meet or medically equal a listing, then a detailed assessment of the claimant's mental RFC is provided by the consultant on a form called a Mental Residual Functional Capacity Assessment ("MRFCA") form (or again, on the electronic equivalent).

Section I of the MRFCA form, entitled "Summary Conclusions," contains boxes the examiner can check evaluating the claimant in four different areas: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Section III of the MRFCA form is entitled "Functional Capacity Assessment" and instructs the examiner to explain his or her summary conclusions in a narrative form. The Court in *Hoeppner v. Kijakazi*, No. 20-CV-582, 2021 WL 4199336 (E.D. Wis. Sept. 15, 2021) explained the current state of the law regarding accounting for moderate difficulties in mental functioning in one's RFC:

> What is clear for the law of this circuit is that, to the extent the SSA relies on an MRFCA form to find moderate limitations in CPP, the ALJ *must* include *all* of the Section I and Section III limitations in the RFC and corresponding hypothetical to the VE. Additionally, *Burmester* [*v. Berryhill*, 920 F.3d 507 (7th Cir. 2019)] teaches that if the MFRCA form is not used, then a plaintiff is on shakier ground relying on *Yurt* [*v. Colvin*, 758 F.3d 850 (7th Cir. 2014)] and its progeny to argue for remand. *Pavlicek* [*v. Saul*, 994 F.3d 777 (7th Cir. 2021)] teaches that if Section III of the MFRCA form encapsulates all of the Section I limitations, *then* the ALJ can rely on it. But ALJs should tread very carefully when doing so. The Section III "translation" should use language that makes it crystal clear that all limitations from Section I were included before the ALJ relies on the Section III translation in formulating the RFC and corresponding hypothetical to the VE.

*Id.* at *8. In this case, the ALJ explained how he was relying on the record evidence, including the medical opinion evidence, in reaching his RFC finding. As to the four broad functional areas, 20 C.F.R. § 404.1520a, both State Agency consultants, Robert Barthell, PsyD, at the initial level, and Jan Jacobson, PhD, at the reconsideration level, found that Buechel had mild limitations in the ability to understand, remember, or apply information and moderate limitations in interacting with others; in concentration, persistence, or pace; and in adapting or managing oneself. (Tr. 109, 156.)

6

To begin, Buechel faults the ALJ for failing to explain how he accounted for her mild limitations in the ability to understand, remember, or apply information (Pl.'s Br. at 14); however, in *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), the court concluded that the ALJ erred by failing to account for "any *moderate* difficulties in mental functioning found in Section I of the MRFCA form." *Id.* at 816 (emphasis added). Given that her assessed limitations in this area were only mild, and Buechel does not assert that this finding was incorrect, it is unclear how Buechel contends the ALJ erred in this regard.

As to the other three functional areas—concentration, persistence, or pace; interacting with others; and adapting or managing oneself—both Drs. Barthell and Jacobson found Buechel to be moderately limited in each category. In Section I of the MRFCA form for sustained concentration and persistence, both doctors assessed moderate limitations in the following areas—the ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods. (Tr. 113, 163.) In both doctors' narrative explanations, they state that Buechel had the focus to complete simple, two-to-three step tasks, but would have more difficulty with complex task completion. (Tr. 114, 164.)

In assessing these opinions, the ALJ explained that he was crediting Drs. Barthell's and Jacobson's opinions that Buechel could complete simple tasks; however, he was rejecting their opinions that she could only perform two-to-three step tasks, finding that limitation too restrictive given her ability to perform household chores, occasionally drive, occasionally shop, and occasionally do crafts. (Tr. 39.)

Buechel also underwent a consultative examination with Mary Law, PsyD in November 2019. (Tr. 40.) Dr. Law similarly opined that Buechel would not have difficulty understanding and carrying out simple instructions; however, if the instructions became more

7

complex, her anxiety would likely interfere. (Tr. 433.) Dr. Law noted that upon mental status examination, Buechel did not evidence any significant recent or remote memory issues and was able to follow a three-step command. (Tr. 431.) The ALJ also explained that he was crediting Dr. Law's opinion, stating that it was fairly consistent with Drs. Barthell's and Jacobson's opinions and supports a finding that Buechel could handle simple work instructions. (Tr. 40.)

The RFC reflects the Section I and Section III limitations the ALJ credited from the opinions of Drs. Barthell and Jacobson, as well as his crediting of Dr. Law's opinion. Again, as to sustained concentration and persistence, the ALJ credited the State Agency consultants and Dr. Law's opinion that Buechel could handle simple work instructions and restricted her RFC to understanding, remembering, and carrying out no more than simple instructions; jobs requiring a reasoning level of no more than two per the Dictionary of Occupational Titles; and performing simple, routine tasks. (Tr. 35.)

Buechel faults the ALJ's limitation to no production rate or pace work with no hourly production quotas and argues that "a straightforward off-task limitation was appropriate and necessary" to account for her limitations in concentration, persistence, or pace. (Pl.'s Br. at 17.) But both State Agency consultants opined that Buechel was not significantly limited in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 114, 164.) While Buechel argues that her assertion that she requires an off-task limitation was based "primarily" on Dr. Law's opinion (Pl.'s Reply Br. at 12, Docket # 18), Dr. Law did not opine Buechel would need time off-task. Thus, it seems the ALJ's RFC limitation was *more* restrictive than what the evidence supports.

8

Buechel has not demonstrated that the evidence demands otherwise. The ALJ did not err in this regard.

As to interacting with others, both Drs. Barthell and Jacobson opined Buechel was moderately limited in the Section I area of interacting appropriately with the general public and explained that Buechel would do best in a job that has little or no public and co-worker contacts. (Tr. 114, 165.) Dr. Jacobson further noted that Buechel could sustain the basic demands associated with relating on an infrequent, task-oriented basis with co-workers, was able to accept supervision as usually found in the workplace and could deal directly with the public on an occasional basis. (Tr. 165.) Dr. Law similarly opined that Buechel would have mild to moderate difficulty interacting with co-workers and supervisors due to her anxiety. (Tr. 433.) The ALJ explained that while he generally accepted the doctors' opinions regarding Buechel's limitations in social interactions, he did not credit the opinion that Buechel should have little to no contact with co-workers or the general public, explaining that the record evidence shows that she was able to spend time with family; occasionally shop in stores; was well-groomed, pleasant, and fully cooperative with normal speech upon mental status examination; was able to understand and follow exam-related instructions and dialogue without difficulty; and despite often exhibiting anxiety symptoms and a flat, anxious affect with low mood, she also displayed appropriate eye contact, a neutral affect, calm and cooperative behavior, and normal speech. (Tr. 39–40.) Thus, the ALJ restricted Buechel to occasional, brief, and superficial contact with the public, co-workers, and supervisors in the RFC. (Tr. 35.) Once again, Buechel has not shown the evidence dictates a more restrictive requirement.

Finally, as to the Paragraph B criteria of adapting or managing oneself, both State Agency consultants found Buechel moderately limited. (Tr. 109, 156.) As to the Section I categories, Drs. Barthell and Jacobson found Buechel moderately limited in the ability to respond appropriately to changes in the work setting. (Tr. 114, 165.) Dr. Barthell explained that Buechel would do best in a job that has a regular set of duties and expectations. (Tr. 115.) Dr. Law similarly opined that Buechel would have at least moderate difficulty adapting to the stresses of a job due to her chronic mood issues. (Tr. 433.) The ALJ found that the evidence generally supports the doctors' opinions that Buechel needs a regular set of duties and expectations due to increased mental health symptoms with life stressors; however, the ALJ found that because her anxiety and depression improved with medication, the evidence does not support a more restrictive RFC than the one assigned—low stress job, which he defined as having only occasional decision-making required and only occasional changes in the work setting. (Tr. 35, 40.) Once again, Buechel fails to show the ALJ erred in this regard.

In short, I find the ALJ's RFC as to Buechel's mental impairments is supported by substantial evidence. Remand is not warranted on this ground.

### 2.2 Whether the ALJ's Decision is Supported by Substantial Evidence

Buechel's second alleged error encompasses several distinct arguments that she brings under the very broad umbrella of whether the ALJ's decision is supported by substantial evidence. First, Buechel argues that the ALJ failed to properly apply the regulatory factors in assessing the medical opinion evidence, specifically, the opinions of her treating psychiatrist, Dr. Amanda Reda-Goglio, her treating therapist, Monica Cross, and the consultative examiner, Dr. Law. (Pl.'s Br. at 19, 22.) Second, Buechel argues that the ALJ improperly cherry-picked her mental health treatment records in assessing her limitations in

concentration, persistence, or pace. (Pl.'s Br. at 21–22; Pl.'s Reply Br. at 4–6.) Third, she argues the ALJ erroneously relied on the objective medical evidence. (Pl.'s Br. at 23–24.) And fourth, the ALJ failed to discuss Buechel's hallucinations and how her physical condition impacted her concentration, persistence, or pace. (Pl.'s Br. at 23.) I will address each in turn.

### 2.2.1 Evaluation and Weight Given to the Medical Evidence

Buechel argues that the ALJ failed to properly apply all the regulatory factors in evaluating the medical opinion evidence. In evaluating the medical opinion evidence, the regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how he considered the factors of supportability and consistency, but he is not required to explain how he evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Buechel argues that the ALJ relied "nearly exclusively" on the records of her treating psychiatrist, Dr. Reda-Goglio, in finding her not disabled, and failed to account for the records from her treating therapist, Cross. (Pl.'s Br. at 19.) Buechel argues that she had a much more frequent and consistent treating relationship with her therapist than her psychiatrist and fails to explain why he chose to credit Dr. Reda-Goglio's notes over Cross' notes. (*Id.*)

While Buechel faults the ALJ for failing to articulate the fact that she treated more frequently with Cross than Dr. Reda-Goglio, the ALJ is not required under 20 C.F.R. § 404.1520c to explain how he evaluated this specific factor. But even if he had, it is unclear how Buechel's argument would support her position. While it is true that she treated with Cross, a therapist, on a more frequent basis, this is because Dr. Reda-Goglio was performing medication management, not therapy. And Buechel did treat with Dr. Reda-Goglio quite frequently, nearly monthly between October 2019 and January 2020 and again from July 2020 to May 2021. Also, Dr. Reda-Goglio performed a mental status evaluation, specifically recording objective evidence regarding Buechel's concentration and memory, amongst other things, whereas Cross did not. Dr. Reda-Goglio also had the expertise, as a psychiatrist, to assess how Buechel's medication affected her impairments. (*See* Tr. 38 citing Dr. Reda-Goglio's record at 21F/21 (Tr. 837).)

Buechel also argues the ALJ improperly discounted Dr. Law's opinion "regarding Plaintiff's decompensation in the presence of high anxiety" despite finding the opinion persuasive. (Pl.'s Reply Br. at 5.) But the ALJ specifically explained which parts of Dr. Law's opinion he found persuasive, and which parts he did not. He explained that Dr. Law's opinion was persuasive to the extent that she, like Drs. Barthell and Jacobson, opined that Buechel could handle simple work instructions, would have moderate difficulty interacting with

others, would have moderate difficulty concentrating, and would have moderate difficulty adapting to work stress. (Tr. 40.) The ALJ further found, however, that "[w]hile Dr. Law said the claimant may have increased difficulty during periods of high anxiety, the claimant's anxiety improved overtime with medication"; thus, "[g]reater restrictions than those in the [RFC] would be inconsistent with the evidence showing normal speech, good memory, normal concentration, appropriate hygiene, and improvement with medications and therapy." (*Id.*)

Thus, the ALJ followed the regulations by properly explaining the weight given to the medical evidence and Dr. Law's opinion, discussing the supportability and consistency of the evidence with the record as a whole. The ALJ did not err in this regard.

### 2.2.2   Cherry-Picking the Record Evidence

Buechel argues the ALJ cherry-picked the record evidence, specifically by relying on the records of Dr. Reda-Goglio over the records of Cross. (Pl.'s Br. at 20; Pl.'s Reply Br. at 5.) An ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). An ALJ has an obligation, however, "to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Id.*

This is not a case where the ALJ cherry-picked the record. Contrary to Buechel's assertion that the ALJ relied "nearly exclusively" on Dr. Reda-Goglio's notes, the ALJ addressed all the medical evidence regarding Buechel's mental impairments, including records from providers who were treating her for physical impairments, such as Dr. Bert Callahan (*see* Tr. 37 citing 24F/6), the consultative examinations performed by Dr. Glass and

13

Dr. Law (Tr. 37 citing 3F and 4F), Cross' therapy records (Tr. 37 citing 21F, 23F), Dr. Reda-Goglio's records (Tr. 37 citing 21F), and a November 2020 mental health consultation in relation to her weight management clinic (Tr. 37 citing 20F/54). The ALJ considered how Buechel's medications impacted her mental health conditions (Tr. 37–38) as well as Buechel's May 2020 function report in which she described "significant problems" (Tr. 38). Buechel has not shown the ALJ erred in this regard.

### 2.2.3 Citation to Objective Evidence

Buechel faults the ALJ for relying on the "objective" medical evidence regarding her mental status noted by Dr. Reda-Goglio in her treatment records. (Pl.'s Br. at 23–24.) In so doing, Buechel cites to various district court cases where the court found, in that specific context, the findings did not support the ALJ's conclusion. (*Id.*) Buechel does not, however, tailor the legal argument to the specific facts of her case. And in this case, the ALJ did not err in relying on Dr. Reda-Goglio's treatment notes.

As an initial matter, the regulations specifically allow the ALJ to consider all evidence relevant to an individual's claim. 20 C.F.R. § 404.1520b. In the mental health context, a psychiatrist, such as Dr. Reda-Goglio, is a medical doctor specializing in mental health conditions. And Buechel treated with Dr. Reda-Goglio frequently during the relevant period. Thus, her observations upon Buechel's mental status examinations are highly relevant pieces of evidence to consider. And Dr. Reda-Goglio consistently found, for example, that Buechel's concentration and attention were within normal limits and that she had good recent/remote memory. (Tr. 524, 687, 836–37, 842, 847, 852, 932, 937, 947.) These findings indeed are inconsistent with Buechel's statements to both Cross and Dr. Reda-Goglio regarding her difficulties with memory and concentration. It is clear how the ALJ assessed these objective

findings when evaluating Buechel's statements of disabling symptoms for consistency with the record as a whole. Remand is not warranted on this ground.

### 2.2.4 Discussion of Other Evidence

Finally, Buechel states that the ALJ improperly declined to discuss her audio and visual hallucinations and how her physical symptoms affected her concentration, persistence, or pace. (Pl.'s Br. at 23.) These arguments are underdeveloped; thus, I need not consider them. *See Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."). Furthermore, Buechel does not suggest what limitations and work restrictions would address these conditions. Thus, any error on the ALJ's part is harmless. *See Jozefyk*, 923 F.3d at 498. Remand is not warranted on this ground.

### 2.3 Hypotheticals Given to the VE

Buechel argues the evidence supports an absence and off-task limitation to account for her moderate limitations in concentration, persistence, or pace and that the ALJ erred by failing to fully account for these limitations in the hypotheticals to the VE. (Pl.'s Br. at 24–27; Pl.'s Reply Br. at 7–13.) But as Buechel acknowledges, an ALJ is not required to discuss hypothetical questions not supported by the record. (Pl's Reply Br. at 8.) *See Cass v. Shalala*, 8 F.3d 552, 555–56 (7th Cir. 1993) (stating that "when considering the appropriateness of an hypothetical question posed to a vocational expert, '[a]ll that is required is that the hypothetical question be supported by the medical evidence in the record'") (internal citation omitted). And for the reasons explained above, I find that the ALJ properly accounted for Buechel's moderate limitations in concentration, persistence, or pace in the RFC. The ALJ's hypothetical question to the VE mirrored the RFC. (Tr. 76–77.) The VE testified that while

15

Buechel's past work would be eliminated, there was other work available in sufficient numbers in the national economy that the hypothetical person could perform. (Tr. 77.) The ALJ did not err in this regard.

## CONCLUSION

Buechel argues that the ALJ's decision finding her not disabled is contrary to the substantial evidence in the record. For the reasons explained above, I find that the ALJ's decision in this case is well supported by the substantial evidence in the record. The Commissioner's decision is affirmed. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of September, 2023.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge